Law Offices of
# GORDON MEHLER PLLC
747 Third Avenue ⋄ 32nd Floor ⋄ New York, NY 10017-2803

Gordon Mehler
*Principal*

Nathaniel Burney
Rebecca Stack Campbell
Linda Kagan
Michael Rakower
Daniel Rothstein
Harvey Stuart
Joyce Young
Mengtao Yu
*Of Counsel*

Virgina Norling Branham
Rick Guimond
Ben Stadler
*Paralegals*

September 16, 2010

VIA ECF
Hon. Carol Bagley Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Joseph Iorio*, Cr. No. 10-340 (S-2) (CBA)

Dear Judge Amon:

We represent Joseph Iorio in the above-referenced criminal action. In light of the pre-trial conference called for tomorrow morning, we write to inform the Court of further concerns relating to the government's *Brady* and *Giglio* obligations.

During the Court's September 13th pre-trial conference regarding these very issues, the prosecution represented to the Court that the government had been aware of the New Jersey Department of Environmental Protection's ("DEP") investigation into Leticia Rojas for only three weeks. And, in the government's *in limine* motion of September 12th, the prosecution stated that "the government has informed [Ms. Rojas] that [the government] cannot and will not intervene in the DEP proceeding." Exhibit A, Letter from Michael Warren dated September 12, 2010, at 2.

However, the prosecution provided our firm with a second *Giglio* letter on September 14th, which states that "in October 2009, the government requested that the DEP delay for six months any action it might be contemplating against Rojas." Exhibit B, Letter from Michael Warren dated September 14, 2010, at 1. Thus, not only has the government known of the investigation of Rojas for at least a year, but it did, in fact, intervene in the investigation. Moreover, in this same *Giglio* letter, the government produced a March 2010 letter from the Port Authority (whose agents are involved in Mr. Iorio's case) to the New Jersey DEP attesting to Ms. Rojas's cooperation and that the DEP refrain from revoking her trucking license. Exhibit C, Letter from Michael Nestor dated March 31, 2010, at 2.

Also, last Friday, the prosecution represented to us that Ms. Rojas would "probably" not testify, yet in the pre-trial conference on Monday the prosecution said she definitely would testify if the prosecution's *in limine* motion were granted.

We call the Court's attention to these contradictions from the government due to our concern that the constantly shifting information and positions are harming our ability to effectively prepare for trial. Indeed, had the Court not already postponed the trial by one week due to other late disclosures by the government, the second *Giglio* letter, informing us for the first time of the government's longstanding knowledge of Rojas's investigation, would have been issued to us in the middle of trial.

Respectfully,

*Gordon Mehler*

Gordon Mehler

# EXHIBIT A



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

Ioriomotinlimn.wpd

September 12, 2010

The Honorable Carol B. Amon
United States District Judge
United States Courthouse
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Joseph Iorio
     <u>Criminal Docket No. 10-340 (S-2)(CBA)</u>

Dear Judge Amon:

  This letter is submitted in support of the government's motion <u>in</u> <u>limine</u> to preclude cross-examination of a potential government witness, Leticia Rojas, regarding a pending state administrative proceeding with implications of criminal liability.

**I. ISSUE PRESENTED**:

  Leticia Rojas is the owner and operator of a trucking business, Leticia, Inc. In 2008, Rojas was recruited by the defendant Joseph Iorio to participate in a kickback scheme that forms the basis of the charges contained in the above-referenced indictment.

  Rojas reported the scheme to law enforcement and under its supervision recorded conversations with Iorio, during which they discussed the aforesaid scheme. She is prepared to testify at trial. However, on Thursday, September 9, 2010, the State of New Jersey, Department of Environmental Protection ("DEP") issued a Notice revoking Leticia, Inc. of its license to transport hazardous waste and barred Rojas from that industry.

  The gravamen of the allegations supporting the revocation is that from June 2005 to February 2006, Rojas and Leticia, Inc. allowed trucking companies not licensed to transport hazardous waste to perform subcontract work for Leticia, Inc., failed to carry proper insurance for that business and made false statements in furtherance of these violations. As

2

reflected in the Notice of Revocation, the false statement allegations implicate potential criminal penalties. Rojas has 30 days to appeal the revocation and debarment.

Rojas's counsel has indicated that Rojas is prepared to testify regarding the events underlying Iorio's indictment and will discuss other matters of impeachment contained in the government's letter disclosed to the defense on September 10, 2010. However, she will assert her Fifth Amendment privilege against self-incrimination with respect to the allegations underlying the revocation of her license. Nonetheless, Rojas will acknowledge the existence of that proceeding and state that because of the pending nature of that matter she is invoking her privilege against self-incrimination with respect to questions regarding it. Finally, Rojas will acknowledge that while the government has informed her that it can not and will not intervene in the DEP proceeding, she intends to bring to the DEP's attention her assistance in the prosecution of the defendant.

## II.  **LEGAL AUTHORITY**:

Case authority amply supports the proposition that a defendant's right to confrontation is not violated by the Court's preclusion of cross-examination on collateral matters, so long as the witness testifies fully regarding the subject matter of the case. United States v. Brooks, 82 F. 3d 50 (2d Cir. 1996) (court did not commit error by failing to strike testimony after witness on cross-examination refused to testify regarding uncharged drug deals); United States v. Yip, 930 F.2d 142, 147 (2d Cir. 1991) (district court properly declined to strike the testimony of a witness who asserted Fifth Amendment privilege regarding check cashing and kickback scheme); United States v. DiGiovanni, 544 F.2d 642, 645 (2d Cir. 1976) (no error in district court's refusal to strike testimony of government witness who invoked the Fifth Amendment with respect to cross-examination regarding absconding with a rented car and casing a bank). See also United States v. Cardillo, 316 F.2d 606, 611 (2d Cir 1963}.

Here Iorio's right to confront Rojas would not be violated by the Court's preclusion of cross-examination on the collateral matter of the pending DEP proceeding, because Rojas will testify fully regarding her knowledge of the scheme to defraud charged in the indictment. Moreover, any cross-examination regarding the pending DEP proceeding would be of limited relevance because it primarily involves events occurring in 2005 - 2006, well before the period charged in the indictment, and does not relate to any of the facts directly in issue.

3

Indeed, most of the facts in this case are not in dispute as the bulk of the government's evidence will consist of recorded conversations between Rojas and Iorio. Regardless, there is ample impeachment material available to the defense, as outlined on the government's <u>Giglio</u> letter of September 10, 2010.

Indeed, Iorio should welcome Rojas's presence despite the limited circumscription of cross-examination proposed. At the afternoon proceeding of September 10, 2010, counsel for Iorio asserted that Rojas was the person who initiated Iorio's participation in the charged scheme to defraud and that he had never instructed her to inflate bids to his competitors as alleged in the indictment. Rojas is willing to testify regarding these assertions and her presence will afford Iorio an opportunity to question her regarding those claims.

### III.  **CONCLUSION**:

In sum, the Court is within its discretion to permit Rojas to testify and assert her privilege against self-incrimination with respect to the limited issue of the allegations underlying the recent license revocation proceeding. That assertion will not unduly restrict the defendant's inquiry as to the charged conduct and indeed will afford him an opportunity to advance any defense he might have. Accordingly, the Court should permit Rojas to testify, despite her limited invocation of her Fifth Amendment privilege.

                                          Respectfully submitted,

                                          LORETTA E. LYNCH
                                          UNITED STATES ATTORNEY
                                          EASTERN DISTRICT OF NEW YORK

By: _____
      Michael H. Warren
      Assistant U.S. Attorney

cc: Gordon Mehler, Esq. (By ECF)

# EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*One Pierrepont Plaza*
*Brooklyn, New York 11201*

*Mailing Address:*  *147 Pierrepont Street*
*Brooklyn, New York 11201*

September 14, 2010

Filed Under Seal

Gordon Mehler, Esq.
Law Offices of Gordon Mehler, PLLC
747 Third Avenue - 32nd Floor
New York, NY 10017

        Re:  United States v. Joseph Iorio
             Criminal Docket No. 10-340 (S-2) (CBA)

Dear Mr. Mehler,

      Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the government hereby supplements its September 10, 2010, letter regarding Leticia Rojas, who is a potential witness at the above-referenced trial scheduled to commence on September 20, 2010.

      As noted in the prior Giglio letter, on September 9, 2010, the State of New Jersey, Department of Environmental Protection ("DEP") moved to revoke the license of Rojas's company, Leticia, Inc., to transport solid waste and debarred her from that industry.

      Prior to that revocation, in October 2009, the government requested that the DEP delay for six months any action it might be contemplating against Rojas, in order to permit law enforcement to explore the possibility of employing Rojas's assistance in a potential investigation. In December 2009, the government alerted DEP that it was withdrawing its request.

      By letter dated March 10, 2010, (copy attached) the Port Authority of New York and New Jersey alerted the DEP of Rojas's assistance in several investigations and requested that, as a consequence, her license not be revoked. Further, by

letter dated March 31, 2010, Rojas's attorney in the DEP matter also cited Rojas's cooperation as a factor in mitigation.  Her attorney also submitted letters dated March 25, 2010, April 6, 2010, and April 23, 2010, discussing her medical condition previously disclosed on September 10, 2010.  Copies of the aforesaid letters of her attorney are attached.

        Very truly yours,

        LORETTA E. LYNCH
        UNITED STATES ATTORNEY
        EASTERN DISTRICT OF NEW YORK

By:   Michael H. Warren
     Assistant U.S. Attorney

# EXHIBIT C



*Michael Nestor*
*Deputy Inspector General/Director of Investigations*

**CONFIDENTIAL**

March 31, 2010

Daniel DiLella
Deputy Attorney General
Attorney General's Office
State of New Jersey
R.J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

Re: Leticia, Inc.

Dear Mr. DiLella:

This letter is in connection with your pending license revocation action against Letica Rojas, the owner of Leticia, Inc. ("Leticia"). I am writing to provide information to you that would influence against the revocation of Letica's license.

In April 2007, Leticia was the proposed awardee of a contract at The Port Authority of New York & New Jersey ("Port Authority") World Trade Center ("WTC") site to remove a large quantity of soil from the East Bathtub, where the new PATH Transportation Hub is being constructed. In April 2006, the New York City Business Integrity Commission ("BIC") issued Leticia a license on the condition that Leticia agreed to the imposition of an Integrity Monitor because of prior criminal conduct on the part of Manual Rojas, Leticia Rojas' husband. The Monitorship required that Manual Rojas have no involvement with Leticia. In light of the imposition of the Integrity Monitor by BIC, the Port Authority required Leticia to enter into a Monitoring Agreement with the Port Authority as a condition of being awarded the WTC contract, with the same agreement conditions as did the BIC agreement.

Since April 2007, Rojas has been cooperative with the Port Authority's Office of Inspector General ("OIG") in every respect in connection with the Monitoring Agreement. Additionally, the Integrity Monitor has found no violations of the law by Letica and has found no evidence that Ms. Rojas violated the Agreement by her husband's involvement in the business.

In fact, Ms. Rojas has gone above and beyond the extent of the cooperation that the Agreement requires when she brought to the attention of the OIG information that has

5 Marine View Plaza - Suite 502
Hoboken, NJ 07030
T: (973) 565-4302    F: (973) 565-4307
mnestor@panynj.gov


**THE PORT AUTHORITY** OF NY & NJ

since led to the arrest and pending prosecution (by the United States Attorney for the Eastern District of New York) of a high-level construction official in a large construction firm. Without Ms. Rojas' cooperation, and to the extent she did, the investigation and prosecution would not have been possible.

Additionally, Ms. Rojas has continually provided to the OIG, and other law enforcement agencies, valuable information pertaining to the conduct of other trucking firms and the Teamsters Union.

In light of the continued and consistent cooperation provided by Ms. Rojas, and the value of her cooperation by continuing to be in the trucking business, it is this Offices' recommendation that your office consider any such penalty, short of revocation of her license.

Your consideration of this information and recommendation is much appreciated.

Sincerely,

Michael Nestor
Director
Office of Investigations

Cc:   K. Auerbacher
      G. Farley
      H. Williams